ADMINISTRATORS OF STONE v. THE UNITED STATES CASUALTY COMPANY.

1. An accident policy provided that "the insured is required to use all due diligence for his personal safety and protection;" *held*, that the fact that the insured was killed by falling from the second story of a barn which he was having built, in consequence of the breaking of a joist having a secret defect, did not conclusively show a breach of this stipulation, but was properly left to the jury.
2. The policy also provided that it should be void if the assured changed his occupation, without notice, to a more hazardous one; *held*, that the terms "changing his occupation" meant engaging in another employment as a usual business.
3. Other provisions of the policy in question construed.

On rule to show cause why verdict for the **plaintiff** should not be set aside.

Stone's adm'rs v. United States Casualty Co.

Argued before BEASLEY, CHIEF JUSTICE, and BEDLE and SCUDDER, Justices.

For plaintiff, *J. W. Taylor* and *T. N. McCarter.*

For defendant, *C. H. Voorhis* and *Ashbel Green.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This is a suit on a contract of insurance against "bodily injuries effected through violent and accidental means." One of the conditions of the policy is in these words, *viz.,* "The party insured is required to use all due diligence for personal safety and protection, and to give immediate notice to the company in the event of changing occupation, profession, or employment to a more hazardous exposure, under the company's classifications, than is named in the application for this policy, and to pay such additional premium as may be required to cover such extra hazard; and failure thereof shall render this policy void."

On the argument, two exceptions to the proceedings at the trial were taken, grounded on this stipulation.

*First.* It was insisted that the assured did not use due diligence for his personal safety and protection.

The circumstances were these: the assured was having a small barn put up, and while the same was building, had gone up to the second story to look on at the work. Stepping to one side he trod upon a joist which, from a concealed defect, broke, and he was killed by falling to the ground. At the time of the accident he was heavily clad in two overcoats, and was said to be an awkward man. These facts do not show any disregard to his personal safety, on the part of the assured. There was no rashness or undue exposure in placing himself in the position described, and the breaking of the timber, which was the proximate cause of the death, was a pure accident. Besides, this was altogether a question for the jury, and they were instructed in the language of the charge to "take all the circumstances into con-

sideration in determining, as a question of fact, whether his exposure was such as a prudent man would not subject himself to, and whether he exercised that degree of care which would be required of a prudent man." The verdict in favor of the assured, on this point, is amply warranted by the proofs.

The second objection, arising out of the clause of the policy above recited, was, that there was error in the charge of the judge touching that provision which prohibited a change of occupation on the part of the assured, without notice. In this policy the deceased was described as a teacher, and it was insisted that he had given up that occupation and had become a builder, which was, according to the specifications of the policy, a business attended with greater hazard. That Mr. Stone had been a teacher by profession was not denied, and the entire proof of his change of occupation since he had been insured consisted in the fact that he had caused, apparently for his own use, two dwelling-houses to be erected. There seems to be no substance whatever in this objection. The court would have been fully warranted in saying that there was no evidence whatever from which the assumption by the assured of any new business could be inferred. But the point was left to the jury, with the explanation that the expression "changing occupation," &c., meant an engaging in another employment as a usual business. It seems to require no argument to show that this exposition was correct. It is simply the clear, literal meaning of the terms, which can, in this connection, have no other signification. Mr. Stone was a teacher out of employment, and it seems preposterous to affirm that because he had one or two houses built by contract, that he thereby became a builder by profession. Persons of wealth often invest their money in buildings, but it would be a palpable error to classify them, with respect to occupation, among builders. The instructions of the judge and the findings of the jury on this head were clearly correct.

There was a third ground of defence, which is dependent

on the meaning of the following stipulation, endorsed on the policy, *viz.*, " Policy holders insured under the preferred class. will not be entitled to recover for injuries received in any employment or by any exposure either more hazardous in itself, or classified by the company as more hazardous than the occupations named in the preferred class."

By force of this provision the counsel for the defendants insists that even if it be true that if the assured did not change his occupation within the meaning of the policy, still, if he lost his life in doing an act which was not incident to his occupation of teacher, but was incident to that of builder, the plaintiffs were not entitled to recover. This was the view adopted at the trial, and the case, subject to this interpretation, was submitted to the jury. The charge presents this question in these words : "In this connection the proper construction is, to exempt the company from liability for injuries received in doing any act which falls peculiarly within the ordinary duties of the forbidden occupation. To illustrate : an attorney at law taking charge of a steam engine on a single occasion would not thereby so change his occupation, profession, or employment as to entirely avoid his policy, but he could not hold the company on the policy for any injuries he sustained in doing that single act." This interpretation is the one most favorable to the defendants that can, by any possibility, be put upon the clause in question, and the jury, being thus instructed, found, as they were fully justified in doing, that the act of the assured which led to his death was not an act that was more appropriately incident to other occupations than it was to that of a teacher. This finding was based on the common sense idea that a teacher who has a house in the course of erection may visit such house as a spectator, without doing anything which is aside from the ordinary line of *his* life. The consequence is, that under any practicable construction of this contract the verdict cannot be disturbed. My only scruple is, whether this instruction did not incline too much to the side of the defence. After a careful examination of this clause it does

not seem to me that it should be allowed to have so wide a scope as was given to it at the trial. We effect this result by adhering strictly to the meaning of the terms used. The injuries excluded from the compensations of the policy are described as those that are "received in any employment, or by any exposure either more hazardous in itself or classified by the company as more hazardous." These terms, literally rendered, require that the assured, to come within their effect, must, at the time of the injury, be in an employment more dangerous than his own. The language has respect to employments, and not to individual acts. It is true that a certain degree of ambiguity is introduced by the expression "other exposure," but looking at the body of the policy we find these terms used in the sense of the risks arising from a business or occupation. By adhering to the literal signification of the terms employed, these endorsements prefixed to the several classes of employments lose all force as independent stipulations, and serve the simple purpose of graduating such employments for the service of that provision of the policy which prohibits the assured from passing, at his own option, from one business to another. Understood in this view they are properly a part of the classifications, but if they are to be received as containing new terms of the contract they are entirely out of place. If the company intended to say to the assured that if he did any act which did not strictly belong to his own occupation, but was embraced more properly in some other business, and if thereby any harm to him accidentally resulted, that in such event he could claim nothing under his policy, it was easy for them to do so in plain language. Such a stipulation would obviously be one of a most important character, and we would expect to find it in the body of the instrument. A qualification of the agreement so restrictive of the rights of the party insured ought not to be admitted, unless the terms of this endorsement will bear no other rational interpretation. If the terms used are imperfect or ambiguous it is the fault of the defendants; it is their contract, and the construction of

it must be most strongly against them—*contra proferentes.* Nor do I think the liberal interpretation of this clause which the defence contends for, a practical one. It would be difficult to put it in practice, for who can say, in many cases, what acts are properly incident to one occupation, and which are not so to any other? The sub-divisions of employments are so numerous and minute that, in actual life, it is impossible to separate them by any visible and exact line; for instance, in the first of these classifications, the shopkeeper is placed, and in the second the laborer; the employments of these are distinct, but with respect to particular acts it would be extremely difficult, if not impossible, to classify them into those which are common to both occupations, and into those which are peculiar to each. It does not seem to me proper to bring into this agreement this confusion and uncertainty by construction. It certainly is not necessary for the reasonable protection of the company, for there are other restrictions in this instrument which are, apparently, sufficient to debar a party insured from doing acts appertaining to other occupations, which are of a particularly hazardous nature. I refer to the clauses forbidding undue exposure. Even the case put of an attorney driving a steam engine would probably come within this prohibition.

But there is still another, and, as it seems to me, a decisive objection against the admission of this endorsement as constituting in itself a substantive agreement. That objection is this: that considered in this light it cannot be received as any part of the contract between these parties. As I have stated, this clause is a prefix to the classification on the back of the policy, and such prefix is not referred to in the body of the instrument. The policy itself is very explicit as to what shall be comprised in the contract. Its language is, that this policy "is issued and accepted subject to all the provisions, conditions, limitations, and exceptions herein contained or referred to, and upon the express agreement that the statements and declarations of the insured in his application for this insurance are warranted to be true in all

respects, and that said application, together with the company's classifications of hazards endorsed hereon, are referred to and made a part of this contract." This specification of the parts going to make up the agreement is clear, and it does not embrace this prefix in question, if such prefix is to be taken as a modification of the body of the policy in a most material respect. On these various grounds I incline to the view that the endorsement in question does not constitute a substantive stipulation, but is merely explanatory of the stipulations to the extent already indicated.

The rule to show cause should be discharged.

CITED *in Hoagland* v. *Segur,* 9 *Vr.* 238.